DAVID J. COHEN, ESQ.
California Bar No. 145748
**COHEN & PAIK LLP**
177 Post Street, Suite 600
San Francisco, CA 94108
Telephone: (415) 398-3900

Attorneys for Defendant **Jason Scott Colette**

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:05-CR-00042-01RRB |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | **MOTION OPPOSING CRIMINAL** |
| v. | ) | **FORFEITURE OF PROPERTY AND FOR** |
| | ) | **RETURN OF PROPERTY UNDER FED.** |
| JASON SCOTT COLETTE, | ) | **R. CRIM. P. 41(e)** |
| | ) | |
| Defendant(s). | ) | Date: |
| | ) | Time: |
| | ) | |

## INTRODUCTION

On March 23, 2007, at the sentencing hearing in this matter, the Court permitted filings in connection with Mr. Colette's view that criminal forfeiture is inappropriate, and in connection with Mr. Colette's motion for return of property. In an order issued in connection with that hearing, the filings were set to be filed by today, April 9, 2007.

## STATEMENT OF FACTS

On November 28, 2005, state and federal authorities executed a search warrant at Jason Colette's residence, 1038 Lakeview Terrace, Fairbanks, Alaska. On that same date, the task force executed a search warrant at Mr. Colette's business, Arctic Alarm

and Audio located at 1915 South Cushman Street, Fairbanks, Alaska.

The authorities seized a brand new Sea-Doo 215A Jet-Ski Boat and a 2005 Karavan trailer from outside the residence. That Sea-Doo and trailer had recently been purchased for in excess of $12,000. They also seized $38,848 in United States Currency from a large gun safe in the master bedroom, and 14 different firearms from different parts of the residence.[1]

Numerous items were seized from the business address. Many of these items were turned over to the City of Fairbanks. (See inventory attached as Exhibit A). Other seized items were not turned over to the City of Fairbanks remain, apparently, in federal hands. These items include the Arctic Alarm and Audio business records, necessary for the adjudication of this forfeiture motion and for the conduct of the hearing, approximately $1,000 in cash, and other items. The inventory of seized items from the business, describing those items not included in the inventory received by the City of Fairbanks, is attached as Exhibit B.

On or about December 13, 2005, the government filed an indictment which included, as counts 6 and 7, criminal forfeiture

---

[1] (1) Ingram Model 10A1, .45cal/9mm machine gun, serial number A6041381, with silencer, a Bowers 9mm suppressor, Model CAC9, serial number S927; (2) Remington Mohawk 48, 12 gauge shotgun, serial number S279681; (3) Harrington & Richardson Topper Model 48, 12 gauge shotgun, serial number AM250982; (4) American Arms, 10 gauge shotgun, serial number 0220016; (5) Remington Woodmaster Model 740, 30-06 rifle, serial number 8324S; (6) Winchester Model 190, .22 rifle, serial number B1822823; (7) Stevens Model 67E, 12 gauge shotgun, serial number D395391; (8) Winchester Model 94, 30-30 rifle, serial number 4139992; (9) Colt Sporter, 7.62x39 rifle, serial number LH010714; (10) Armas Bost Kibar, 20 gauge double-barrel shotgun, serial number 1528; (11) Mossberg Model 500A, 12 gauge shotgun, serial number L100810; (12) Mossberg Model 500B, .410 gauge shotgun, serial number P317355; (13) Colt Super 38, 38 semi-auto pistol, serial number 126180; (14) Mossberg Model 500A, 12 gauge shotgun, serial number L986808.

counts.  Count 6 sought forfeiture of $38,848.00 in United States currency, and Count 7 sought forfeiture of the 14 firearms.  <u>See</u> Indictment Filed December 15, 2005.

On or about December 29, 2005, the DEA sought administrative forfeiture of the $38,848 in United States Currency and the Sea-Doo Jet-Ski.  The notices of forfeiture were sent at a time that Mr. Colette was incarcerated, but the notices were neither sent to his attorney of record nor to his address at the jail.

On August 1, 2006, Mr. Colette's trial commenced.  Assistant United States Attorney Schroder admitted that, "I was unaware until over the weekend that I even needed forfeiture – I've never done a case that had criminal forfeiture counts." August 1, 2006 TR. at 6.  The Court expressed surprise that the jury had to make a finding on the forfeiture.  <u>Id</u>. At 6-7.

On August 3, 2006, while the jury was deliberating in connection with the non-forfeiture counts 1-4, the Court and counsel took up the matter of the forfeiture instructions. August 3, 2006 TR. at 76.  The Court indicated that it usually decided the forfeiture counts, and did not submit them to the jury.  <u>Id</u>. at 77.  The government then represented that, pursuant to Fed. R. Crim. P. 32.2(b)(4), it was not requesting a jury determination of criminal forfeiture.  <u>Id</u>. At 76-77.

Defense counsel Rex Butler, Esq. went off the record to discuss the matter with Mr. Colette.  After the record continued, Mr. Butler said that "<u>I'm</u> not...opposed to the court making that [the forfeiture] decision.  The Court said, "Well, if I decide the forfeiture issue, I wouldn't do it until sentencing, if you wanted...and I would take all kinds of testimony.  I mean...if

you put me on notice that you want to – if you say, Judge I'm
agree –- I agree that you can decide the issue of forfeiture, but
I want to be able to submit evidence on the issue before you make
your decision, I would say okay...But you'd have to say those two
things first...unless the government objected.  But I don't think
the government would object." Id. at 78-79.

Assistant United States Attorney Schroder said, "We wouldn't
object to that.  But I – the only point I'd make is I think you
have to do a preliminary order of forfeiture to – and – to permit
holding of the –items until a final order is entered, and that
can be – would probably be done at sentencing, is my guess." Id.
at 79.

After the Court and Mr. Butler stated that it was likely not
necessary to do a preliminary order of forfeiture, the Court
observed that submitting such an order appears to be the
government's practice.   The government stated that the
preliminary order allows third parties to make a claim. Id. at
82.

The Court outlined the proposed procedure: after any guilty
verdict on the drug counts, the government would submit a
preliminary order of forfeiture, the defense would respond, and
the Court would rule.  Third parties would be given a chance to
make claims, and the Court would make a final ruling on
forfeiture at the sentencing hearing. Id. at 84.

The Court then took a purported waiver of jury trial from
Mr. Colette by speaking to Mr. Butler:

THE COURT: Do you agree with the procedure I've outlined?

MR. BUTLER: I do, Judge.

4

THE COURT: Do you waive your right to have the jury determine the issue of forfeiture?

MR. BUTLER: Yes, Your Honor.

THE COURT: And the government withdraws any request for the jury to –

MR. SCHRODER: Anything that might seem like a request, we withdraw, Your Honor.

Id. at 85.

After the jury convicted Mr. Colette on the drug counts, Counts 1 and 2, the government submitted a Request for Entry of Preliminary Order of Forfeiture on August 14, 2006 seeking forfeiture of the following four weapons: (1) Ingram Model 10A1, .45 cal/9mm Machine Gun, Serial Number A6041381; (2) Remington Woodmaster Model 740, 30-06 Rifle, Serial Number 83245; (3) Colt Sporter, 7.62x39 Rifle, Serial Number LH010714 and (4) Mossberg Model 500A, 12 Gauge Shotgun, Serial Number L986708. The request also sought forfeiture of the $38,848.00 in United States Currency. On that same day, before the defense could respond, the Court issued the requested preliminary order of forfeiture.

On August 23, 2006, Mr. Colette moved for reconsideration of the preliminary order of forfeiture arguing that the government had not established the required nexus under Fed. R. Crim. P. 32.2(b)(1), and that Mr. Colette had not knowingly and voluntarily waived his right to a jury trial. The government opposed on August 31, 2006, and the Court denied the motion for reconsideration on September 1, 2006.

On March 12, 2007, the government moved for a final decree of forfeiture, and on March 19, 2007, Mr. Colette opposed forfeiture, requested a Court hearing on forfeiture at sentencing

pursuant to Mr. Butler's unopposed August 3, 2006 agreement with the Court as condition precedent to waiving jury trial on forfeiture.  Mr. Colette also moved, on March 12, 2007, for return of his Jet-Ski and the 10 firearms in County 7 for which the government had not sought a preliminary or final order of forfeiture.  In a March 21, 2007 order, the Court indicated that it had "not finally resolved the forfeiture issue.  Therefore, all of defendant's motions, with the exception of the forfeiture issue are hereby denied."

At the sentencing hearing on March 23, 2007, the defense further argued its forfeiture and return of property points, including that Mr. Colette had not knowingly and voluntarily waived his right to a jury trial on the forfeiture counts because it was Mr. Butler that agreed to the waiver, and a personal waiver from Mr. Colette, either in writing, or on the record, was required.  The Court granted Mr. Colette's request to formally brief the forfeiture and return of property issues, and to request a hearing, subsequent to the sentencing hearing.  This brief is, therefore, duly submitted, and Mr. Colette asserts his right to a jury trial on Counts 6 and 7 because he never knowingly, voluntarily and personally waived his right under Fed. R. Crim. P. 32.2(b)(4) to a jury trial.  At the very least, Mr. Colette requests an evidentiary hearing on forfeiture before the Court, pursuant to Mr. Butler's agreement with the Court when Mr. Butler purported to waive jury trial on Mr. Colette's behalf.

The Court permitted Mr. Colette, as part of the post-trial filings, to proffer what he would demonstrate at an evidentiary hearing to show that the government has not proved, by a preponderance of the evidence, that there is the requisite Rule

32.2(b)(1) nexus between the cocaine seized from the safe in Mr. Colette's master bedroom on the one hand and the $38,848 in U.S. currency and four weapons listed in the government's preliminary order of forfeiture, on the other hand.

The Exhibits and materials in our proffer are voluminous and we are attempting to file the proffer and exhibits, some of which contain PDF audio and image files, by electronic filing. If that is not possible, we will seek leave to file the exhibits in hard copy form.

Mr. Colette is Entitled to a Jury Trial on Counts 6 and 7 Because There is No Knowing and Voluntary Waiver of His Right to Jury Trial Either on the Record or in Writing.

A defendant has a statutory right to a jury ruling on which assets are forfeitable. <u>United States v. Robinson</u>, 8 F.3d 418 (7th Cir. 1993). A waiver of that right is valid only if knowingly and voluntarily made. The absence of a written waiver form is not dispositive. However, where, as here, the district court fails to personally interrogate a defendant on the record to ensure that he understands the right he is waiving, the waiver is invalid unless the record otherwise satisfactorily demonstrates that the defendant <u>personally</u> gave a knowing and voluntary waiver of his right to have a jury decide which assets were subject to forfeiture. <u>Id</u>.

Here, the record reflects no discussion with Mr. Colette by either the Court or counsel. Nor does Mr. Butler represent that he has spoken with Mr. Colette, and explained to him Mr. Colette's right to trial by jury under Rule 32.2(b)(4). Rather, the record shows that Mr. Butler agreed with the waiver of jury trial, and Mr. Butler waived "his" right to have the jury

7

determine the issue of forfeiture.  August 3, 2006 TR at 85. This waiver was clearly insufficient.

To be effective, as Mr. Colette pointed out in his motion for reconsideration of the preliminary order of forfeiture, a waiver of jury trial must be personal, knowing, and voluntary. <u>Godinez v. Moran</u>, 509 U.S. 389, 400 (1993).

The 11th Circuit has held that Fed. R. Crim. P. 23(a)(1) permits waiver of jury trial by a defendant in a forfeiture case only if the waiver is in writing.  <u>United States v. Garrett</u>, 727 F.2d 1003, 1012-14 (11th Cir. 1984).  <u>Garrett</u> remanded for an evidentiary hearing on whether counsel's oral waiver was made while Mr. Garrett was cognizant of his right and said nothing, or whether Mr. Garrett did not voluntarily or knowingly agree with counsel's oral waiver.  Here, Mr. Butler has filed a motion indicating that Mr. Colette did not understand Mr. Butler's waiver, and there is nothing in the record showing that Mr. Colette was ever given the opportunity to agree or disagree - or have explained to him the significance of - Mr. Butler's waiver.

For all of the above reasons, Mr. Colette is entitled to a jury trial on Counts 6 and 7.

## II.

### MR. COLETTE IS ENTITLED TO A HEARING ON THE IMPROPER NOTICE OF ADMINISTRATIVE FORFEITURE IN CONNECTION WITH THE JET-SKI

The Ninth Circuit has held that a defendant is entitled to a hearing on his claim of inadequate notice of forfeiture. <u>United States v. Clagett</u>. 3 F.3d 1355 (9th Cir. 1993).  Here, Mr. Colette's Jet-Ski and trailer, valued at more than $12,000, were taken from outside his residence, and he received no notice of their administrative forfeiture.

Attached as Exhibit C is a letter sent to an attorney who was not Mr. Colette's counsel of record, dated December 29, 2005, in connection with the $38,848. The DEA did not pursue the administrative forfeiture of the money, and was, apparently, unaware that Count 6 of the indictment – filed prior to the issuance of the administrative forfeiture notice – already sought forfeiture of the $38,848. There is every reason to believe that the notice for the 2005 Sea-Doo 215A with a 2005 Karavan Trailer was sent to Mr. Satterberg on December 29, 2005, and not to Mr. Colette at the jail. Mr. Satterberg was not Mr. Colette's attorney of record on December 29, 2005. On December 29, 2005, the government well knew of Mr. Colette's whereabouts. He was in custody.

Rule 41(e) motions are treated as proceedings in equity when there are no criminal proceedings pending against the movant. United States v. Martinson, 809 F.2d 1364, 1366 (1987). When the government has actual knowledge of an interested party's whereabouts, failure to direct the required personal notice cannot be considered compliance with either the statute or minimum due process requirements. United States v. Woodall, 12 F.3d 791 (8th Cir. 1993).

The government must provide notice reasonably calculated, under all the circumstances, to apprise the defendant of the pendency of the action. Chin Yi Tu v. NTSB, 470 F.3d 941 (2006). When the government knows the interested party is in prison at the time of the forfeiture proceeding, notice is adequate where the notice was sent to the correctional facility at which the petitioner was incarcerated, by certified mail, return receipt requested. Dusenbury v. United States, 534 U.S. 161 (2002);

9

<u>Collette v. DEA</u>, 368 F.Supp.2d 1120 (D. Alaska September 13, 2005).  On the other hand, when the government knows that an interested party is in prison, notice is inadequate unless sent to the prison or to the defendant's attorney of record.  <u>Woodall</u>, <u>supra</u>.

Here, the notice in connection with the Jet Ski and trailer was inadequate because it was never sent to Mr. Colette at jail, and neither he, nor his attorney of record[2], ever received notice of the administrative forfeiture.  Therefore, this Court has jurisdiction to return the Jet Ski and trailer under Rule 41(e).

### III.

### <u>THE 10 FIREARMS NOT SUBJECT TO ADMINISTRATIVE OR CRIMINAL FORFEITURE MUST BE RETURNED.</u>

The government has not pursued criminal forfeiture of 10 firearms listed in Count 7.  The government has also not pursued administrative forfeiture of these firearms.

Although the government indicated at the sentencing hearing on March 23, 2007 that it intends to pursue administrative forfeiture of the 10 firearms, it has not done so.  The firearms have been in possession of the government for approximately 18 months.  The firearms have no evidentiary value, and there is no basis for their not being returned.

Pursuant to Rule 41(e), this Court should order the return to Mr. Colette of the 10 firearms.  <u>See</u> <u>United States v. US Currency $83,310.78</u>, 351 F.2d 1231 (9th Cir. 1988)(If property has

---

2 Mr. Colette's attorney of record at the time that the notice of administrative forfeiture may have been sent, that is, on or about December 29, 2005 through January 3, 2006 was attorney William Bryson.  Mr. Bryson committed suicide on or about January 12, 2006.

been seized without forfeiture or criminal proceedings being
filed, an aggrieved person may file a motion under Fed. R. Crim.
P. 41(e) to recover the property).

IV.

**<u>MR. COLETTE IS ENTITLED TO AN EVIDENTIARY HEARING, IF NOT A
JURY TRIAL, ON THE NEXUS BETWEEN THE COCAINE FOR WHICH HE WAS
CONVICTED IN COUNTS 1 AND 2 AND THE FOUR FIREARMS AND $38,848
IN UNITED STATES CURRENCY.</u>**

The government must prove, by a preponderance of the
evidence, that the property sought to be forfeited either (a)
constituted or was derived from the proceeds of the criminal
violation; or (b) was intended to be used to facilitate the
violation. <u>United States v. Littlefield</u>, 821 F.2d 1365 (9th Cir.
1987); <u>United States v. Juluke</u>, 426 F.3d 323, 326 (5th Cir. 2005).
18 U.S.C Section 853.

Here, the government has proffered no evidence other than
the fact that the four firearms and the cash were found in the
same gun safe as the cocaine. However, the large gun safe
contained business records from Arctic Alarm and Audio, cancelled
business checks, and 10 firearms not sought to be forfeited by
the government. <u>See</u> Trial Record, 8/1/06 - 8/3/06.

Attached as Exhibits D through V are documents and exhibits
in support of Mr. Colette's proffer of what would be shown at a
sentencing hearing.

First, the business records of Arctic Alarm and Audio, and
the testimony of its many customers and vendors listed and
described in the exhibits would show that the business was a
vital and profitable concern, and that it frequently received and
made payments in cash. These payments were stored in Mr.
Colette's gun safe, together with the other business documents.

11

Many of the business records are in the hands of the federal/state joint task force, and were seized, on November, 28, 2005, from the business. They are the subject of our instant motion for return of property under Fed. R. Crim. P. 41(e), and we need the records at the time of the jury trial or court hearing.

Second, Exhibit D is a copy of the tax returns for Arctic Alarm and Audio for the entire period of its existence. These returns also show that the business was a vital concern, producing profit and explaining the cash in the safe. Under 18 U.S.C. Section 853(d), there can be no rebuttable presumption that there was no other source for the funds, or that the funds were acquired during the period of the violation.

Exhibits E through V are customer lists, vendor lists, customer and employee interviews, business records, and photographs and a layout chart of the location and interior of Arctic Alarm and Audio, all demonstrating the legitimacy of Arctic Alarm and Audio, the fact that it was a legitimate ongoing concern, the large amount of money moving in and out of the business, the fact that the business was paid cash by its customers and paid cash to its vendors, the fact that Arctic Alarm and Audio was the source of the $38,848 in the safe, and the source of the money used to purchase the four firearms sought to be forfeited, the identity of the numerous customers, vendors and employees who would be called at a trial or hearing to demonstrate all of the above, and several available witness interviews to support the assertions in this proffer.

While it is not our burden, we could nonetheless demonstrate at an evidentiary hearing - and we proffer that we would

demonstrate – using the attached evidence and witness testimony that the firearms (which were undisputedly lawfully possessed, and found by the jury not to have been possessed in connection with the drugs) were purchased with the proceeds of Arctic Alarm and Audio.

We further proffer that we would call numerous witnesses at the hearing (both friends and family), most of whom sent supporting letters considered by the Court at the time of the sentencing hearing on March 23, 2007, to demonstrate that Mr. Colette is a hunter and gun enthusiast and collected firearms as a hobby.

Finally, the government cannot show, and has not shown, and has not even made an effort to show, that any one of the four firearms were used to sell the drugs or to facilitate the sale of the drugs. The only firearm concerning which there was any evidence of potential facilitation was the Ingram Model 10A1, about which the informant Mr. Eugene Johnson purportedly testified. However, Mr. Johnson's credibility, as shown at trial and at the sentencing hearing is far too suspect to rely on him for forfeiture even of this one firearm.

**V.**

### MR. COLETTE IS ENTITLED TO A HEARING, UNDER THE EIGHTH AMENDMENT, IN CONNECTION WITH THE PROPORTIONALITY OF THE FORFEITURE IN THIS CASE

Even if the Court finds forfeiture to be appropriate, Mr. Colette is entitled to a hearing on, and the Court has a constitutional responsibility to determine, whether the proposed forfeiture violates the excessive finds clause of the Eighth Amendment to the United States Constitution. <u>Austin v. United States</u>, 113 S.Ct. 1036 (1993); <u>United States v. Littlefield</u>, 821

F.2d 1365 (9th Cir. 1987); <u>United States v. Bieri</u> 21 F.3d 819 (8th Cir. 1984).  In making this determination, the Court may take into account relevant considerations including the value of the illegal drugs, and the nexus between the drugs and the property sought to be forfeited.  <u>Littlefield</u>, <u>supra</u>.

Here, forfeiture of the four firearms and over $38,000 in currency is excessive when compared to the cocaine found, and the other aspects of sentencing in this case, including a period of time of 96 months in federal prison.

**VI.**

**UNDER RULE 41(e), MR. COLETTE IS ENTITLED TO RETURN OF THE PROPERTY SEIZED FROM HIS BUSINESS WHICH WAS, APPARENTLY, TURNED OVER TO THE GOVERNMENT.**

Exhibit B contains a list of items seized from Mr. Colette's business by state and federal agents which were not in possession of the city of Fairbanks.  These items must be in possession of the United States, and we are seeking confirmation from the city of Fairbanks of this fact.  Because the government has not sought either administrative or criminal forfeiture of these items, they must be returned to Mr. Colette.  <u>United States v. US Currency</u>, $83,310.78, 351 F.2d 1231 (9th Cir. 1988).

Further, the business records listed in Exhibit B are necessary exhibits at the evidentiary forfeiture hearing being sought in this motion, and the holding of which was previously promised by this Court as a quid pro quo for Mr. Butler purporting to waive Mr. Colette's right to jury trial on the forfeiture counts of the indictment.

Dated: April 9, 2007                 Respectfully submitted,

                                     /s/ David J. Cohen
                                     177 Post Street
                                     Suite 600
                                     San Francisco, CA 94108
                                     (415) 398-3900
                                     (415) 398-7500

## CERTIFICATE OF SERVICE

I, Tonia M. Nelsen-Sanchez hereby certify that I am over the age of eighteen years, am not a party to the within action and my business address is Cohen & Paik LLP, 177 Post Street, Suite 600, San Francisco, CA 94108.

A copy of the foregoing **MOTION OPPOSING CRIMINAL FORFEITURE OF PROPERTY AND FOR RETURN OF PROPERTY UNDER FED. R. CRIM. P. 41(e)** in the case of <u>United States v. Colette</u>, Case No. 4:05-CR-00042-01RRB was sent by United States mail to:

```
Brian D. Schroder, Esq.
Assistant United States Attorney
United States Attorney
District of Alaska
310 K Street, #520
Anchorage, AK 99501
Fax: 907-271-2345
```

I certify under penalty of perjury that the foregoing is true and correct.  Executed on April 9, 2007, at San Francisco, California.

<u>/s/ Tonia M. Nelsen-Sanchez</u>
Tonia M. Nelsen-Sanchez
Legal Assistant